IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

-----------------------------------------------------x

CHRISTOPHER T. ANGLE         :    3:03 CV 133 (JBA)

v.                           :

MORGAN STANLEY DW, INC.[1]   :    DATE: NOV. 20, 2003

-----------------------------------------------------x

### RECOMMENDED RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

On January 21, 2003, plaintiff Christopher T. Angle, appearing pro se, filed this action against defendant Morgan Stanley & Co., Inc. for its alleged refusal to hire him for a position at its Danbury branch office. (Dkt. #1). On March 12, 2003, plaintiff filed a Motion for Inclusion or Joinder of Morgan Stanley DW, Inc. ["Morgan Stanley"], which motion, construed as a Motion to File Substituted Complaint, was granted by United States District Judge Janet Bond Arterton six days later. (Dkt. #9 & 3/18/03 endorsement thereon). Accordingly, plaintiff filed his Amended Complaint on March 25, 2003. (Dkt. #11).[2]

In his Amended Complaint, plaintiff asserts that defendant's failure to hire him because of his history of bankruptcy violates 11 U.S.C. § 525(b) of the United States Bankruptcy Code ["§ 525(b)"] and the Connecticut Unfair Trade Practices Act ["CUTPA"], CONN. GEN. STAT. § 42-110 et seq. (Dkt. #11). Specifically, plaintiff contends that defendant violated § 525(b) when it declined employment "based solely on plaintiff's history of a properly discharged bankruptcy," and plaintiff bases his CUTPA claim on the allegation that defendant acted in an "immoral, oppressive and unscrupulous [manner] and in violation of

---

[1] In his Amended Complaint, plaintiff corrected defendant's name by changing it from "Morgan Stanley & Co." to "Morgan Stanley DW, Inc." (Dkts. #9 & 11).

[2] See note 1 supra

AO 72A
(Rev. 8/82)

§ 525(b)] . . . ." (Dkt. #11, at ¶¶ 10, 12).

On April 23, 2003, defendant filed the pending Motion to Dismiss the Complaint and brief in support. (Dkts. ##13-14). On May 8, 2003, plaintiff filed his brief in opposition. (Dkt. #15). Defendant filed its reply fifteen days later (Dkt. #17), as to which plaintiff filed his sur-reply on June 16, 2003. (Dkt. #20; Dkt. #19 & 6/16/03 endorsement thereon).

On May 29, 2003, plaintiff filed the pending Motion for Enlargement of Complaint, construed as a Motion to Amend.³ (Dkt. #18). In his Proposed Second Amended Complaint, plaintiff adds defendant's alleged violation of 11 U.S.C. § 525(a) ["§ 525(a)"] to his existing claims. (Dkt. #18, Proposed Second Amended Complaint, at ¶ 9). On June 19, 2003, defendant filed its brief in opposition (Dkt. #22), as to which plaintiff filed his reply brief on July 11, 2003. (Dkt. #23). On August 26, 2003, United States District Judge Janet Bond Arterton referred the pending motions to this Magistrate Judge. (Dkt. #26).

For the reasons stated below, defendant's Motion to Dismiss the Complaint (Dkt. #13) is <u>granted</u> and plaintiff's Motion to Amend the Complaint (Dkt. #18) is <u>denied</u>.

## I. FACTUAL BACKGROUND

On or about January 8, 2001, plaintiff applied for a job with defendant. (Dkt. #11, at ¶¶ 4-5). Plaintiff attended an interview on January 17, 2001 (<u>id.</u> at ¶ 6), and thereafter, according to plaintiff, the branch manager, Richard Porco informed him that he would like to hire him. (<u>Id.</u>). On January 25, 2001, plaintiff returned to the office to complete paperwork and complete several tests. (<u>Id.</u> at ¶ 7). Plaintiff filled in Rev. Form U-4, upon which he disclosed his history of bankruptcy. (<u>Id.</u> at ¶ 8). On January 30, 2003, plaintiff spoke to Porco who explained that the tests "were fine and 'not an issue.'" (<u>Id.</u> at ¶ 9). On

---

³His proposed [Second] Amended Complaint was attached, with Exh. A, which is a blank copy of Rev. Form U-4. Plaintiff did not file a brief in support of this motion.

2

or about February 1, 2001, Porco informed plaintiff that Morgan Stanley decided not to employ him because of the bankruptcy. (Id. at ¶ 10).

In the First Count of his Amended Complaint, plaintiff asserts that defendant violated § 525(b) because § 525(b) forbids employers from discriminating against individuals with histories of bankruptcy. (Id.). In the Second Count, plaintiff contends that defendant's actions were "immoral, oppressive and unscrupulous . . ." in violation of CUTPA. (Id. at ¶ 12).

Defendant moves to dismiss both counts of the Amended Complaint. (Dkt. #13). With regard to the First Count, defendant argues that § 525(b) does not apply to acts of non-hiring by a private employer. (Dkt. #14, at 3-7; Dkt. #17, at 2-8). Defendant provides two grounds for dismissal of the Second Count: (1) since plaintiff based the Court's jurisdiction on the presence of a federal question, the Court loses its pendent jurisdiction over the state law claim if the § 525(b) claim is dismissed; and (2) plaintiff's CUTPA claim is "predicated solely upon the alleged violation of [§ 525(b)]," thus, dismissal of plaintiff's § 525(b) claim requires dismissal of the CUTPA claim. (Dkt. #14, at 7-8; Dkt. #17, at 8).

In response, plaintiff asserts that it is Congress' intent to give individuals who declare bankruptcy a "fresh start," and the "remedial" nature of the Bankruptcy Code demands a broad interpretation of § 525(b), and the "logic of [§ 525(b)'s] language" extends the statute to cover hiring decisions. (Dkt. #15, at 3-13; Dkt. #20). Accordingly, plaintiff urges the Court to follow the holding in Leary v. Warnaco, Inc., 251 B.R. 656, 658 (S.D.N.Y. 2000). (Dkt. #15, at 11-14; Dkt. #20).

Plaintiff also moves to amend his complaint to include a claim under 11 U.S.C. § 525(a). (Dkt. #18). In the Proposed Second Amended Complaint, he alleges that defendant is a "governmental unit" because it operates under the auspices of the National Association

3

of Securities Dealers ["NASD"]. (Id. at ¶ 9). According to plaintiff, since Congress mandated NASD's formation, "the denial of employment does . . . have relevance to an organization created by the U.S. government." (Id.).

In response, defendant argues that NASD is not a "governmental unit" under § 525(a). (Dkt. #22, at 3-5). Alternatively, defendant asserts that, even if NASD is a "governmental unit," § 525(a) does not apply to "private entities which . . . are subject to governmental regulations." (Dkt. #22, at 5, quoting In re Lutz, 82 B.R. 699, 702 (Bankr. M.D. Pa. 1988)).

In his reply, plaintiff asserts that the legislative history and case law demonstrate that a "'governmental unit' is defined in its broadest sense." (Dkt. #23, at 5). He contends that NASD was established pursuant to Congressional legislation and that it has legal authority to regulate and enforce the law. (Dkt. #23, at 6-7) Therefore, according to plaintiff, NASD is an "instrumentality" of the government. (Id. at 6-10). Accordingly, plaintiff asserts that since NASD-member brokerage firms such as defendant employ compliance officers who execute NASD directives, these firms become governmental units as well. (Id. at 9-10).

## II. DISCUSSION

### A. DEFENDANT'S MOTION TO DISMISS

In deciding a motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984); Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001)(citation omitted). The Second Circuit has directed district courts to apply a more flexible standard when evaluating the sufficiency of pro se complaints because pro se plaintiffs lack familiarity with formal pleading requirements. Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir.

4

2002). Thus,"it must be beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Id. (citation omitted). The issue on a motion to dismiss "is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990)(citing Scheuer, 416 U.S. at 236).

### 1. APPLICATION OF § 525(b) TO ACTS OF NON-HIRING

Although neighboring district courts have interpreted this statute, reaching differing conclusions, the application of § 525(b) to acts of non-hiring is one of first impression for the Second Circuit and for this District. Section 525(b) provides:

> No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title [or] a debtor or bankrupt under the Bankruptcy Act . . . solely because such debtor or bankrupt –
>
> (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
>
> (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
>
> (3) has not paid a debt that is dischargable in a case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(b). This provision is juxtaposed with § 525(a), which provides that: "[A] governmental unit may not . . . deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title . . . ." 11 U.S.C. § 525(a). Congress added subsection (b) to § 525 in 1984. Pub. L. No. 98-353, § 309(3).

AO 72A
(Rev. 8/82)

It is well established that courts must apply a statute according to its plain meaning, unless "doing so would frustrate Congress'[] clear intention or yield patent absurdity . . . ." United States v. Wiener, 96 F.3d 35, 38 (2d Cir. 1996)(internal quotation & multiple citations omitted), aff'd on other grounds sub nom. Brogan v. United States, 522 U.S. 398 (1998). See also Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)(courts follow the "plain meaning" rule when a statute's language is clear and unambiguous, and the provision in question is consistent with the overall statutory scheme). Courts have held that the "plain meaning" rule is particularly appropriate when construing the Bankruptcy Code because the Bankruptcy Code is "a detailed and calculated statutory scheme." Fiorani v. CACI, 192 B.R. 401, 405 (E.D. Va. 1996)(internal quotations & multiple citations omitted).

There are two competing interpretations of § 525(b). Defendant urges that § 525(b) does not expressly prohibit private entities from denying employment, and thus it does not apply to an employer's failure to hire a former debtor. (Dkt. #14, at 3-7). A majority of courts to address this issue have agreed. See Fiorani, 192 B.R. at 404-10; Pastore v. Medford Sav. Bank, 186 B.R. 553, 554-55 (D. Mass. 1995); Stinson v. BB&T Inv. Services, Inc., 285 B.R. 239 (Bankr. W.D. Va. 2002). This interpretation is buttressed by § 525(a)'s inclusion of a provision that expressly prohibits employers from refusing to hire a debtor because of his bankruptcy. 11 U.S.C. § 525(a). When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983)(citations & internal quotations omitted). This principle, known as inclusio unius est exclusio alterius, is a long standing cannon of statutory construction. United States v. Tappin, 205 F.3d 536, 540 (2d Cir. ("[T]o express or include one thing implies the exclusion of the other . . . ."), cert. denied, 531 U.S. 910

6

(2000).

Plaintiff, relying on the opinion of U.S. District Judge Charles Brieant of the Southern District of New York, offers an alternative interpretation of § 525(b)'s plain meaning. (Dkt. #15, at 11-14; see Leary, 251 B.R. at 658-59). Plaintiff contends that the language "with respect to employment" is broad enough to encompass all aspects of the employment relationship, including hiring decisions. (Dkt. #15, at 9-10). The court in Leary observed that "[t]he evil being legislated against is no different" whether an employer fires a debtor or refuses to hire him, and that a broad interpretation of § 525(b) suits its remedial purpose. Leary, 251 B.R. at 658.

Although this is a plausible interpretation of § 525(b), it is not in accord with settled rules of statutory construction. The cannon of construction inclusio unius est exclusio alterius counsels for the majority's interpretation of the statute. In addition, Congress included an express prohibition against discrimination in termination in § 525(b). If Congress intended the phrase "with respect to employment" to include hiring decisions, there is little reason why that phrase would not include termination decisions as well. If the Court reads the phrase "with respect to employment" to include both hiring and termination decisions, it would violate yet another rule of statutory construction, namely this reading would render Congress' explicit mention of terminations redundant and it is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." Kungys v. United States, 485 U.S. 759, 778 (1988)(multiple citations omitted). Moreover, if the Court reads the phrase "with respect to employment" as encompassing hiring decisions, § 525(a)'s explicit reference to hiring decisions becomes redundant as well because § 525(a) also includes that phrase. Therefore, it is much more likely that the phrase "with respect to employment," as used in both § 525(a) and (b), refers not to hiring and termination

7

decisions, but to other aspects of the employment relationship such as transfers, demotions, hours, and work assignments.

Plaintiff responds to these rules of statutory interpretation by referring to the policy behind the Bankruptcy Act of 1978 and the intent of the Founding Fathers when they wrote the Constitution. (Dkt. #15, at 1-3). Although the Court recognizes that it must give the arguments of pro se plaintiffs greater leeway, plaintiff's inventive arguments cannot be accepted. First, the Supreme Court has repeatedly held that "[l]egislative history is irrelevant to the interpretation of an unambiguous statute." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 808, n.3 (1989)(citation omitted). Moreover, plaintiff does not refer to the legislative history behind Congress' enactment of § 525(b). Instead, he refers to the intent of the Founding Fathers when they gave Congress authority to enact uniform bankruptcy laws in Article I, § 8 of the Constitution. (See Dkt. #15, at 2).[4] Finally, even if plaintiff referred to the appropriate legislative history, it would not have been instructive to the Court because there is little legislative history for the 1984 Amendment to the Bankruptcy Act, and this limited history does not address whether § 525(b) applies to hiring decisions. John C. Chobot, Anti-Discrimination Under the Bankruptcy Laws, 60 AM. BANKR. L.J. 185, 197 (1986).

Plaintiff also responds that "it is practical to think that the scrivener was not thinking in such minute detail or so deeply about words when writing them," and thus forgot to include an explicit prohibition against hiring discrimination in § 525(b). (Dkt. #15, at 11). This assertion runs counter to another cardinal rule of statutory construction: "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)(multiple

---

[4]Plaintiff erroneously refers to Article II, § 8 in his brief. (Id.).

8

citations omitted); see also Hartford Underwriters Ins. Co. v. Union Planters Bank, NA, 530 U.S. 1, 6 (2000)(when the statute's language is plain, the sole function of the courts is to enforce it according to its terms).

As previously indicated, a majority of courts to consider this issue have decided that § 525(b) does not apply to hiring decisions. Fiorani, 192 B.R. at 407; Pastore, 186 B.R. at 555; Stinson, 285 B.R. at 250. The Leary court is the only court to reach the opposite conclusion. Leary, 251 B.R. at 659.[5] Accordingly, in light of the governing rules of statutory construction and the consensus of authority, plaintiff's § 525(b) claim is dismissed.

### 2. PLAINTIFF'S CUTPA CLAIM

Plaintiff based the jurisdiction of this Court over this matter solely on the presence of federal question jurisdiction "as the claim involves the construction and application of 11 U.S.C. [§] 525(b)." (Dkt. #11, at ¶ 3). Plaintiff's federal claim has been dismissed and the balance of factors to be considered under the pendent jurisdiction doctrine, i.e., "judicial economy, convenience, fairness, and comity," all point in favor of declining to exercise jurisdiction over the CUTPA claim. Dilaura v. Power Auth. of the State of New York, 982 F.2d 73, 80 (2d Cir. 1992)(multiple citations omitted). Additionally, in plaintiff's Amended Complaint (Dkt. #11), plaintiff contends that defendant's "immoral, oppressive and unscrupulous" actions in violation of 11 U.S.C. § 525(b) constitute a violation of CUTPA. (Dkt. #11, at ¶ 12). Without a viable claim pursuant to 11 U.S.C. § 525(b), plaintiff no longer has a CUTPA claim.

---

[5] In Re Hopkins, 81 B.R. 491, 494 (Bankr. W.D. Ark. 1987), lends limited support to plaintiffs in § 525(b) failure to hire cases. The Hopkins court held that a bank could not refuse to hire a debtor solely because of her bankruptcy after an offer for full-time employment had been extended and accepted. Id. The Hopkins holding is not relevant here, because as plaintiff concedes, there was no offer and acceptance of employment before Morgan Stanley informed plaintiff of its decision. (Dkt. #11, at ¶¶ 6, 9-10).

9

## B. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." After a responsive pleading has been served, litigants may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Id.

In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court explained that district courts must evaluate Rule 15(a) motions to amend as follows:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

See also John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994). The propriety of granting a motion to amend remains within the sound discretion of the district court, and futility of the amendment is one valid reason to deny leave. Zahra v. Town of Southold, 48 F.3d 674, 685-86 (2d Cir. 1995)(citing John Hancock, 22 F.3d at 462).

Defendant urges that plaintiff's proposed amendment is futile, so leave to amend the complaint must be denied. (Dkt #22, at 2-5). An amendment is futile if it would not survive a motion to dismiss pursuant to Rule 12(b)(6). Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)(citation omitted)(failure to state a claim upon which relief can be granted renders a proposed amendment futile). Therefore, the Court must examine plaintiff's assertions in the proposed amendment in light of the Rule 12(b)(6) standard of review set forth above.

10

AO 72A
(Rev. 8/82)

In his reply brief, plaintiff argues that defendant is a "governmental unit" and therefore subject to the prohibition against hiring discrimination set forth in § 525(a) of the Bankruptcy Act. (Dkt. # 23). The Bankruptcy Act defines "governmental unit" to mean:

> [the] United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27). Plaintiff asserts that NASD was established pursuant to Congressional legislation, so it is an "instrumentality" of the government, and, since NASD-member brokerage firms such as defendant employ compliance officers who execute NASD directives, these firms become governmental units as well. (Dkt. #23, at 2-10). The word "instrumentality" in 11 U.S.C. § 101(27) does not stretch this far.

The Second Circuit has held, in a case alleging a constitutional violation, that NASD is not a state actor: "The NASD is a private actor. . . . It is a private corporation that receives no federal or state funding. . . . [T]he fact that a business entity is subject to 'extensive and detailed' state regulation does not convert that organization's actions into those of the state." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137-38 (2d Cir. 2002)(citation & internal quotations omitted).

The same conclusion was been reached in construing § 101(27) of the Bankruptcy Code. See, e.g., In re Lutz, 82 B.R. 699, 702 (Bankr. M.D. Pa. 1988)("This court is unaware of any cases . . . in which the term 'governmental unit' was held to apply to private entities which . . . are subject to governmental regulations."). Thus, even though brokerage houses are subject to extensive governmental regulation, such subjection does not convert them to governmental units.

11

AO 72A
(Rev. 8/82)

In addition, numerous bankruptcy courts have held that private employers such as banks, management companies, the Better Business Bureau, and insurance companies are not subject to § 525(a). See Wilson v. Harris Trust & Sav. Bank, 777 F.2d 1246, 1248-49 (7th Cir. 1985)(multiple citations listed).  Defendant is well within this category of employers.

Plaintiff again refers to the legislative history of the Bankruptcy Act to support his assertion that the phrase "'governmental unit' is defined 'in the broadest sense.'" (Dkt. #23, at 5). Although no reference to the legislative history is necessary here, the Congressional record does not support plaintiff's proposition. As quoted in Stoltz v. Brattleboro Hous. Auth., 315 F.3d 80, 89, n.3 (2d Cir. 2002), the legislative history of § 101(27) provides that while "governmental unit" is "defined 'in the broadest sense'":

> 'Department, agency, or instrumentality' does not include an entity that owes its existence to State action, such as the granting of a charter or a license but that has no other connection with a State or local government or the Federal Government. <u>The relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function</u>.

(citation omitted)(emphasis added).

Morgan Stanley is a private brokerage firm that sells investment services to clients. It does not carry on a governmental function. Since defendant is not a "governmental unit" as defined by 11 U.S.C. § 101(27), defendant's actions are not proscribed by 11 U.S.C. § 525(a). Accordingly, the allegations in plaintiff's Proposed Second Amended Complaint would not survive a motion to dismiss; because such amendment would be futile, plaintiff's Motion to Amend is denied.

12

AO 72A
(Rev. 8/82)

## III. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion to Dismiss (Dkt. #13 ) is <u>granted</u> and plaintiff's Motion to Amend Complaint (Dkt. #18) is <u>denied</u>.[6]

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 20th day of November, 2003.

Joan Glazer Margolis
United States Magistrate Judge

---

[6] The Magistrate Judge commends the <u>pro se</u> plaintiff for his well-written briefs.

If plaintiff or defense counsel believe a settlement conference before the Magistrate Judge would be productive, even at this late stage, he or she should contact Chambers accordingly.

13