FILED

Dec 1  1 00 PM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---

CHRISTOPHER T. ANGLE,

PLAINTIFF,

V.                                          3:03cv133 (JBA)
                                            DATE: Dec. 1st, 2003

MORGAN STANLEY DW, INC.,

DEFENDANT

---

### Plaintiff's Objection To Magistrate's Recommended Ruling on Defendant's Motion To Dismiss

In accordance with Local Rule 72.2, USDC Rules for Magistrate Judges Plaintiff hereby files objections, which (1) identify the ruling and proposed conclusion, and (2) the factual and legal basis for such objection.

Part 1

a) Plaintiff identifies pages 5 - 8 of Magistrate's Recommended Ruling which addresses the "statute according to its plain meaning" and whether or not the statute frustrates

"Congress' clear intention" (page 6, paragraph 1) and the interpretation of Leary by Judge Brieant (page 7)

b) Plaintiff identifies the discussion of "two competing interpretations of 525(b)," the principle known as <u>inclusio unius est exclusio alterius</u> (page 6, paragraph 2) but the absence of a discussion of the principle (just as important) of <u>Ejusdem Generis</u> which dictates that general language in a list of otherwise specific items of a particular kind creates the class and be limited to that class; the absence of the canon of Statutory Structure "A statute is to be considered in all its parts when construing any one of them" (Lexicon Inc. v. Milberg Weiss Bershad Hynes & Lerach 523 US 26, 36 (1998)); absence of the canon of Avoiding Absurdity (a statute should be interpreted in a way that avoids absurd results (see e.g. United States v. Hendrickson, 26 f. 3d, 321); and absence of the canon of Legislative History (when the plain language and canon of Statutory Interpretation fail to resolve statutory ambiguity, one will resort to legislative history), (see e.g. Lee v. Bankers Trust Co.., 166 F. 3d 540, 544 (2d Cir. 1999).

c) Further Plaintiff notes that the logic of Leary should also be considered.

Part 2

**<u>Factual and Legal Basis of Objections</u>**

-2-

The Defendant and the Magistrate noted the relevance of the principle, <u>inclusio unius est exclusio alterius</u>, which states that "to express or include one thing implies the exclusion of the other," (Page 6 of Recommended Ruling) and " the cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant" (page 8). These two principles must be understood and assimilated in the construction of 525(b) and its neglect in mentioning "hiring" because it mentioned "termination." The case rests, as the magistrate clearly relates, on the assimilation of these two rules of statutory interpretation with the language of Sections 525(b) and 525(a). However, if we include an examination of the logic of the language of 525(b) and 525(a) along with considering in addition the principles of Ejudem Generis, Statutory Structure, Avoiding Absurdity, and Legislative History, we will come to a clear understanding.

## The Logic of the Language and Statutory Principles of Interpretation

Section 525(a) notes that with respect to a bankrupt a "governmental unit may not deny...a license, permit, charter, franchise, or other similar grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person..."

To parse this diagrammatically,

          Grants     =      G1      Licenses
                            G2      Permits
                            G3      Charters
                            G4      Franchises

```
Grants        =        G1       Licenses
                       G2       Permits
                       G3       Charters
                       G4       Franchises
                       G5       Other Similar Grants
                                (A statement of generality)
```

Continuing the analysis for a governmental unit:

<u>Regarding Grants</u>         <u>May Not</u>        <u>Initiate Discriminations</u>
   G1 Licenses                                         D1 Deny
   G2 Permits                                          D2 Revoke
   G3 Charters                                         D3 Suspend
   G4 Franchises                                       D4 Refuse to Renew
   G5 Other Similar Grants                             D5 Discriminate w/respect to
   (A statement of generality)                         (A statement of generality)

Then in 525(a) another enumeration of prohibited governmental behavior (discrimination or denial) against employment:

<u>Regarding Employment</u>     <u>May Not</u>        <u>Initiate Discriminations</u>
   E1 Employment                                       D1 Deny
                                                                     D6 Terminate
                                                                     D5 Discriminate w/respect to
                                                                     (A statement of generality)

However, in 525(b):

<u>Regarding Private Emplymnt.</u><u>May Not</u>     <u>Initiate Discriminations</u>
   E1 Employment (private)                             D6 Terminate
                                                                     D5 Discriminate w/respect to
                                                                     (A statement of generality

The enumerations end in all cases by the statement of generality as required by the doctrine of <u>Ejusdem Generis.</u>

- 4 -

**Principle of Ejusdem Generis**: "The doctrine of Ejusdem Generis is a rule of construction and applies when (1) the clause contains an enumeration by specific words; (2) the members of the enumeration suggest a specific class; (3) the class is not exhausted by the enumeration; (4) a general reference [supplements] the enumeration…and (5) there is [no] clearly manifested intent that the general term be given a broader meaning than the doctrine requires…It rests on particular insights about everyday language usage. When people list a number of particulars and add a general reference like 'and so forth' they mean to include by use of the general reference not everything else but only others of like kind." (Citation omitted; internal quotation marks omitted.) 24 Leggett Street Ltd. Partnership v. Beacon Industries, Inc., 239 Conn. 284, 297, 685 A. 2d 305 (1996).

As stated previously, this canon dictates that general language in a list of otherwise specific items of a particular kind creates the class and is limited to that class. See, e.g., Molloy v. Metro. Transp. Auth., 94 F. 3d 808, 812 (2d cir. 1996); United States v. Clark, 765 F. 2d 297, 303 (2d Cir. 1985).

Section 525 (a) & (b) follows this principle in that
   (1) There is enumeration,
   (2) Members of the enumeration suggest a specific class (grants, employment),
   (3) The class is not exhausted by the enumeration. (Other enumerations for grants could be authorization, opportunity, permission; For employment: may not revoke, hire, promote, ostracize, segregate, diminish.)

- 5 -

(4) A general reference (Grants: "other similar grants"; Employment: "discriminate with respect to")

(5) There is no clear, manifested intent that the general term be given a broader meaning then the doctrine requires. (It is obvious in this case as the majority of courts have ignored altogether the general term as if it did not exist at all.)

Hence, the principle of <u>Ejusdem Generis</u> dictates that when considering statutes, such as 525(a) and (b), where there is a list of particulars with a general reference such as "with respect to employment" the meaning is to include "others of like kind" such as hiring as well as termination of employment.

**Canon of Statutory Structure:** "[A] statute is to be considered in all its parts when construing any one of them." e.g., Lexicon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36 (1998). In understanding 525(b) we look to the whole stature and clearly it is designed to stop discrimination in general against bankrupts with in the government sector and the private sector; the statute uses lists with general references which may be understood and determined by reference to their relationship with the other associated words or phrases (noscitur a sociis). See, e.g. Dole v. United Steel Workers of America, 494 U.S. 26, 36 (1990).

3) **Canon of Avoiding Absurdity:** A stature should be interpreted in a way that avoids absurd results. See, e.g., United States v. Hendrickson, 26 F. 3d 321, 336 (2d Cir. 1994). If we use the <u>exclusio/inclusio</u> interpretation, the stature tends to produce absurd results:

-6-

Assuming that the principle referred to by the Defendant and the Magistrate "[T]o express or include one thing implies the exclusion of the other" is used for interpretation, then the specific enumerations will delineate the understanding of the statute. If there is a deletion or absence of one enumeration in one list compared to another, as in 525(a) & (b), then obviously the one absent will not be included in the statute as the defendant and the Magistrate point out. However, in the event of a statement of generality at the end of the list, this will place the list and its absent, enumerative singularity at an obvious contradiction with itself. The contradiction is evident because the general reference must be ignored even though it is repeated purposefully throughout the statute.

If the Magistrates and Defendant's canon of <u>inclusio unius est exclusio alterius</u> takes precedent, the statement of generality becomes null; if the statement of generality takes precedent as in the Plaintiff's canon of <u>ejusdem generis</u>, the absence of an enumerative component becomes irrelevant.

The explanation is that the two canons have two different appropriate applications:

1) The <u>exclusio</u> principle is used when the statute relies on enumerative lists only in order to be specific and the writer (Congress) understands that there may need to be exclusions and that all things in the enumerative category may not be appropriate for the statute it is creating.

-7-

2) The ejusdem generis principle is used when Congress wants to generate a class of enumerations by giving specific examples and a general reference supplements the enumeration (again, 24 Leggett St. Ltd. V. Beacon). Graphically the situation is summarized in the following:

Exclusio/inclusio                           Ejusdem Generis



E1 – E6 is the Enumerative List            E7 = The General Reference

If Inclusio/Exclusion is used in place of Ejusdem Generis when statements of generality are present, an absurdity is generated because the general reference will have no meaning, and using the principle noted in Defendant's and Magistrate's briefs, it has to be assumed Congress included the general reference for a reason (in fact three (3) times in section 525), and to ignore it would be to frustrate Congress' intentions.

Further, Defendant has admitted in their brief Defendant's Reply Memorandum of Law in Further Support of its Motion to Dismiss the Complaint, page 6, "It is well-settled, however, that the term 'with respect to employment' can and does include actions other than hiring and termination," such as "transfers, demotions, or modifications" which indicates that "with respect to" has meaning.

- 8 -

This being the case and admitting the principles of Ejusdem Generis, Statutory Structure and Absurdity, the only way not to include all the actions of discriminations is to specifically exclude any of those that Congress would like to include. Otherwise, we must take "with respect to employment" to mean (as it is meant) to include all "others of like kind" (again, 24 Leggett St.).

Judge Brieant was the first to clearly recognize the illogic of the interpretation regarding Section 525(a) and (b) and actually used the words "absurd gloss" to indicate this violation of the aforementioned canon of Avoiding Absurdity.

To reiterate Judge Brieant's opinion:

"This rather narrow construction of a remedial stature has been reached by drawing a negative inference comparing this statute with section 525(a)...We are asked to infer from this omission not only that it was purposeful to achieve a disparate result where the Government is the employer, but that section 525(b) accordingly allows employers to discriminate on the initial hiring against those unfortunate economic casualties who are seeking or have obtained a fresh start from the bankruptcy court, and yet at the same time prohibits discrimination against those who have been hired."

Further, the district court argued for a plain meaning analysis:

" The plain meaning of the statute does not support such a gloss. Section 525(b) prohibits an employer from discriminating "with respect to employment." Such language is clearly broad enough to extend to discriminating with respect to extending an offer of employment. Such an application of the plain meaning of the statute makes sense. The evil being legislated against is no different when an employer fires a debtor simply for seeking refuge in bankruptcy, as contrasted with refusing to hire a person who does so. The "fresh start" policy is impaired in either case. A Court should not go out of its way to place such an absurd gloss on a remedial statute, simply because the scrivener was more verbose in writing section 525(a).

Further, "where, as here, the statute's language is plain, 'the sole function of the court is to enforce it according to its terms'." "Plaintiff's claim is for discrimination with respect to employment. This includes by its plain meaning all aspects of employment including hiring, firing and material changes in job conditions."

**Legislative History**: Lastly, it should be noted that when the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, a court will resort to legislative history (see e.g. Lee v. Bankers Trust Co., 166F. 3d 540,544 (2d Cir.1999). With Regards to Section 525(b) if there is any ambiguity left, then the review of the history of the principle of "fresh start" captured within the history of bankruptcy legislation (as noted in Plaintiff's Opposition to Motion to Dismiss, Part II) would leave no doubt that Congress' intent was to abolish economic discrimination in general against

- / 0 -

the bankrupt and specifically against, as the principle of <u>Ejusdem Generis</u> indicates, the hiring aspect in 525(a) and (b).

## Re: Plaintiff's Motion to Amend the Complaint to Include 525(a)

Magistrate's decision to deny the motion to enlarge the complaint to include 525(a) is based on the reasoning that the NASD and Morgan Stanley are not governmental units by any definition. And Plaintiff totally is in agreement. Plaintiff's case derives from the Bankruptcy code's inclusion of the term "instrumentality" to be sufficient to be included in application of the law that pertains to the government.

To summarize Plaintiff's Argument to Enlarge the Complaint:

1) The meaning of 11 USC Section 101(27) makes it clear that "instrumentality" of the government is sufficient to draw applicability of 525(a).

2) Using the first definition of Webster's New Collegiate Dictionary an instrument is " a means whereby something is achieved, performed or furthered" and the dictionary lists the synonym, "tool."

3) As an amendment of the Securities Act of 1933, the Maloney Act was approved June 25th, 1938, and on August 7th, 1939, the NASD came into being as a Self-Regulatory Organization (SRO) to regulate the Securities Industry. "Toward this end, the federal government empowered NASD to be the self-regulatory arm of the securities industry," (NASD: Corporate Information – Corporate Description," page 2)

5) On page three of this NASD's Corporate Description it states "We (NASD) also have the <u>legal authority</u> to enforce our rules vigorously – exercising a range of disciplinary options that includes stiff fines and expulsion from the industry." (Emphasis supplied.) This statement of legal authority implies governmental authority as the word "legal" means according to the Merriam-Webster Dictionary "1: of or relating to law...2: lawful; also, statutory 3: enforced in courts of law."

6) "In fact, the SEC would have to increase its staff by about half – and nearly double its budget – simply to take on all the regulatory duties performed today by NASD." This statement indicates that the NASD works for the taxpayers of the U.S. and is obligated to the SEC and does work that otherwise would have to be done by the SEC which, further, is a declaration of government instrumentality.

7) And that the "NASD also has regulatory responsibilities for government securities under the Government Securities Act of 1986." This is a blatant statement that the NASD is an instrument of the government.

**Conclusion:** The government created the NASD for regulatory purposes of the securities markets. It is eminently clear from the NASD's own declarations that it is empowered by the government to enforce its regulation. From this it is clear that the NASD "is actually carrying out some government function" and we can know this because the NASD is bringing to the securities marketplace the government's priority that regulation of the

securities industry is needed. Thus, we can conclude that the NASD is an instrumentality of the U.S. government.

**The Securities Firm As An Instrumentality**

There are two ways the NASD structures its method of enforcement. According to the NASD's Corporate Profile (page one and two) there exists a Department of Enforcement which "prosecutes fraudulent and other egregious activity" and "to prosecute securities violations uncovered through Member Regulation's examination and cause programs."

Also, within each member firm there exists the position of "Chief Compliance Officer" whose purpose is to effectuate the compliance of the member firm with the regulations of the NASD. (This definition of a compliance officer was confirmed by Dexter Tom of the Boston Office of the NASD.) A compliance officer is an employee of the member, but the role and function is to, as stated above, assure that there is in place at the individual broker-dealer where the officers are employed a "comprehensive compliance and supervisory system." (From "NASD Special Notice to Members," June, 2003)

Thus, we may conclude that although these compliance officers receive their paychecks from their respective securities firms, their allegiance and duties devolve to the NASD and are, in essence, the agents of the NASD. (The Merriam-Webster Dictionary notes "agent" as "means, instrument.") It is incontestable that the compliance officer's duty is to be the instrument of the NASD and to enforce their (the NASD's) priorities on the respective broker-dealer member companies of the security industry.

- 14 -

Of course, Morgan Stanley and the other broker-dealers of the securities industry are private companies in their charter and for profit for their stockholders. However, there are requirements to which they must adhere that emanate from the NASD through its agent, the compliance officers, who are embedded and reside within the member firm.

## Conclusion

The Courts interpret section 525(a) broadly and when discovering that an organization is the functional instrument of the government which affects the priorities of the government, the courts have found 525(a) applicable.

The NASD is a regulatory agency, albeit paid for by the brokerage industry and not the government as dictated to by the U.S. Government through the Maloney Act, whose "close oversight" by the Securities and Exchange Commission clearly demonstrates that the NASD has the nature and essence of being incontrovertibly an instrument of the government.

The agents of the NASD are employed at all the brokerage companies of the securities industry including Morgan Stanley. Although Morgan Stanley is a private company, the decision not to hire the plaintiff was effected by an agent of the NASD due to a discrimination against the bankruptcy of the plaintiff (note the U-4 form attached to the Enlarged Complaint), and thus, is subject to Section 525(a) of the bankruptcy code. As

-15-

the compliance officer is the agent ("instrument") of the NASD and the NASD is the instrumentality ("the means by which something is achieved, performed or furthered") of the SEC, an agency ("instrument") of the U.S. government, the action of discrimination against the plaintiff is subject to the anti-discrimination provision of Section 525(a) of the bankruptcy Code.

For the above reasons, as well as those stated in my Opposition to Motion to Dismiss, the Complaint should be allowed.

                                              The Plaintiff,

                                              Christopher Angle, Pro Se
                                              19 Topledge Road
                                              Redding, CT 06896
                                              (203) 938-3437

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been sent via first class mail, on this date to:

>Debra Morway
>Morgan, Lewis & Bockius LLP
>101 Park Avenue
>New York, NY 10178
>dmorway@morganlewis.com
>212/309-6000

Dated: December 1st, 2003

_____
Christopher Angle